[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION RE: MOTION FOR SUMMARY JUDGMENT (#126)
On October 2, 1997, the plaintiff, New Canaan Bank and Trust Company, filed a two count revised complaint against the defendants, Thomas Cappello and Hacker Oil Corporation. In count one, the plaintiff alleges an interest in property owned by the Cappello by virtue of a mortgage and a mortgage modification agreement on said property given by Cappello to the plaintiff to secure a promissory note in the amount of $250,000. The plaintiff alleges that on or about September 13, 1996, Cappello defaulted on his obligations under the promissory note by failing to make monthly payments as required under the note. The plaintiff additionally alleges that at Cappello's default, it was entitled to require full payment of the note principal and interest and that despite demand on November 6, 1996 for payment of "Two CT Page 6321 Hundred Thousand One Hundred Eighty-Six and 18/100 Dollars ($228,186.18),"[1] Cappello remains in default under his obligations. Revised Complaint, ¶ 12.[2]
In count two, the plaintiff alleges violation of a promissory note provision which prohibits Cappello from further encumbering the subject property with a subsequent mortgage without the plaintiff's permission. The plaintiff alleges that Cappello violated this provision by executing a second mortgage in the amount of $160,000 in favor of the defendant Hacker Oil Corporation. The plaintiff alleges that Cappello is in default thereby; and that he remains in default despite the plaintiff's demand for full payment of the promissory note.
On December 4, 1997, Cappello filed an answer with ten special defenses and a four count counterclaim.
On June 5, 1998, the plaintiff filed a motion for partial summary judgment against Cappello as to liability only on counts one and two and a memorandum of law in support. The plaintiff also submitted two affidavits of the assistant bank treasurer, Lisa Fiorito. In her affidavit dated 5/26/98, Fiorito provides Cappello's loan payment history. Incorporated in the affidavit dated 7/6/98, are certified copies of the subject mortgage, mortgage modification agreement and the open end mortgage and security agreement.
Cappello submitted a memorandum in opposition with his own affidavit and the affidavit of his attorney, James A. Lenes, Esq. In addition, Cappello submitted a supplemental memorandum in opposition and his own cross motion for summary judgment. The plaintiff also submitted a memorandum in opposition to Cappello's cross motion and a reply thereto.
By memorandum of decision dated August 19, 1998, this court denied the plaintiff's motion for partial summary judgment (#126) and the defendant's cross motion for summary judgment (#133).
On September 14, 1998, this court granted the plaintiff's motion to reargue the plaintiff's motion for partial summary judgment (#126) as to liability only, on count one. The plaintiff's reargument motion for partial summary judgment as to liability on count one is presently before this court.
 1. Standard for Summary Judgment
CT Page 6322
Summary judgment "shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue of any material fact and that the moving party is entitled to judgment as a matter of law. . . ."Thompson and Peck, Inc. v. Division Drywall, Inc., 241 Conn. 370,374, 696 A.2d 326 (1997)
"In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . ." Home Ins. Co. v. Aetna Life CasualtyCo., 235 Conn. 185, 202, 663 A.2d 1001 (1995). "Although the party seeking summary judgment has the burden of showing the nonexistence of any material fact . . . a party opposing summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact, together with the evidence disclosing the existence of such an issue. . . ." (Citations omitted; internal quotation marks omitted.) Id. "To oppose a motion for summary judgment successfully, the nonmovant must recite specific facts . . . which contradict those stated in the movant's affidavits and documents." Connecticut National Bankv. Great Neck Development Co., 215 Conn. 143, 148, 574 A.2d 1298
(1990). "Only evidence that would be admissible at trial may be used to support or oppose a motion for summary judgment." HomeIns. Co. v. Aetna Life Casualty Co., supra, 202-03. "It is especially appropriate to hold an affidavit submitted by a moving party to a stringent standard." Evans Products Co. v. ClintonBuilding Supply, Inc., 174 Conn. 512, 516, 391 A.2d 157 (1978).
 2. Plaintiff's Motion for Partial Summary Judgment as to Liability (Count One)
The plaintiff moves for partial summary judgment on count one on the ground that there is no genuine issue of material fact "regarding the [issue] raised in the Plaintiff's September 30, 1997 revised complaint." In count one of the revised complaint, the plaintiff alleges that on or about September 13, 1996, Cappello defaulted on his obligations under the promissory note and mortgage by failing to make monthly payments as required under the note. The plaintiff argues that the affidavit of the assistant bank treasurer, Lisa Fiorito, affirms that the plaintiff is the owner and holder of the subject note and mortgage; that Cappello executed the note and mortgage; that Cappello is in default for non payment; and that Cappello was given notice of default for non payment. (See Pl.'s Mem. in Supp. CT Page 6323 Summ. J., filed 6/5/98, pp. 2, 6.) The plaintiff argues that the Fiorito affidavit also establishes Cappello's payment history. (Pl.'s Motion to Reargue, filed 9/8/98, p. 3.) The plaintiff reasons that as Cappello has defaulted, and has admitted receiving notice of his default and acceleration of the debt, summary judgment as to liability is appropriate. (Pl.'s Motion to Reargue, p. 2.)
Cappello argues in opposition that summary judgment as to liability is inappropriate because he made the required number ofpayments due in 1995 and 1996. Specifically, Cappello asserts that pursuant to the December 1994 mortgage modification agreement, his January 1995 loan payment was waived and his loan was to be brought current with the February 1995 payment. He reasons, therefore, that only 11 more payments were due in 1995 and 11 payments were due in 1996 with a final balloon payment due on the note on December 13, 1996. (Def.'s Mem. in Opp., p. 9.) He asserts that the Fiorito affidavit admits that he made 11 payments in 1995 — the final 5 payments of 1995 being made together on January 4, 1996. He reasons that the affidavit admits that the bank accepted the 11 payments due in 1995 and in 1996. He concludes that as he made the final payment due in 1996 on November 26, 1996, 20 days after the plaintiff's November 6, 1996 demand letter, and as acceptance of late payments after notice of default cures the default and reinstates the loan, liability can not be established and the plaintiff is not entitled to summary judgment.[3]
The court is considering the affidavit for the limited purpose of establishing the record of payments made by Cappello between 1/15/92 and ll/26/96.[4] Practice Book § 17-46
requires "supporting and opposing affidavits . . . be made on personal knowledge . . . sett[ing] forth such facts as would be admissible in evidence, and . . . [showing] affirmatively that the affiant is competent to testify to the matters stated therein." Fiorito identifies herself as the bank assistant treasurer and avers that the affidavit is made on her personal knowledge. The court also note that Cappello does admit to the record of payments, at least as to the number of payments made in 1995 and 1996. (See Def.'s Mem. in Opp., p. 9.)
The Fiorito affidavit does not resolve the question ofwhether and when Cappello defaulted on the mortgage agreement. The revised complaint asserts that Cappello defaulted "on or about September 13, 1996." (Revised Complaint, p. 2.) The Fiorito CT Page 6324 affidavit, by contrast, avers that Cappello "defaulted . . . by failing to pay the monthly payment due on October 13, 1996." (Pl.'s Mem. in Supp. Summ. J., Fiorito Aff., dated 5/26/98.) More importantly, the court notes that while the affidavit lists a record of payments made between 1/15/92 and 11/26/96, Cappello's payments were frequently late, so the question of which late payment triggered the default may only be resolved by a showing of how the bank applied each of the payments. For instance, the following payments were made in 1995 and 1996: 2/17/95, 3/27/95, 5/12/95, 7/31/95, 12/11/95, 12/18/95, 1/4/96 (five payments), 1/31/96, 2/26/96, 4/30/96, 5/30/96, 7/01/96, 8/06/96, 9/11/96, 9/17/96, 9/30/96 and 11/26/96. (Pl.'s Mem. in Supp. Summ. J., Fiorito Aff., dated 5/26/98, pp. 4-5.) The court note first that no payment was made in January 1995. Cappello argues that pursuant to the mortgage modification agreement executed in December 1994, the January 1995 payment was waived. (Def's. Mem. in Opp., p. 2.) No such provision appears in the modification agreement. (Pl.'s Summ. J., Suppl. Fiorito Aff., dated 7/6/98, Ex. 1.) Indeed, the bank's sending Cappello notice that it was not in receipt of the January 1995 payment; (Def.'s Mem. in Opp., Cappello Aff., Ex. A, B); suggests that no such provision was a part of the modification agreement. The bank, for its part, should not force the court to speculate that it credited the 2/17/95 payment as the payment due in January 1995; nor should the court be forced to use this speculation to count forward with each successive payment to conclude that the 11/26/96 payment was applied to the payment due on September 13, 1996. While the affidavit sets forth a record of payments made between 1/15/92 and 11/26/96, it does not resolve the issue of fact as to whether and when Cappello defaulted.[5]
Cappello's argument fails to resolve the question as to whether and when he defaulted. Cappello asserts that pursuant to the mortgage modification agreement, his loan was made current as of February 1995; the January 1995 payment was waived; and he made the required number of payments due in 1995 and 1996. As a threshold matter, no condition in the modification agreement provides that the loan would become current as of February 1995 and no provision waives the January 1995 payment. (See Pl.'s Summ. J., Suppl. Fiorito Aff., dated 7/6/98, Ex. 1.) More importantly, implicit in the argument that because he made the required number of payments in a payment year, he is not in default, is the assumption that he contracted with the plaintiff to make a specific number of payments on the note in a calendar year. There is no such contract provision in the mortgage or the CT Page 6325 mortgage modification agreement. Pursuant to the mortgage note, Cappello contracted to pay "beginning on the 13th day of January, 1992 and on that day of each month thereafter. . . ." (Pl.'s Mem. in Supp. Summ. J., Suppl. Fiorito Aff., Ex. 1.) Pursuant to the mortgage modification agreement, the interest rate was reduced and the monthly payment was set as $2537. (Pl.'s Mem. in Supp. Summ. J., Suppl. Fiorito Aff., Ex. 1.) Therefore, Cappello's argument has failed to resolve the question as to whether and when he defaulted.[6]
The court denies the plaintiff's motion for partial summary judgment as to count one as an issue of fact remains as to Cappello's liability for default on the
WILLILAM F. HICKEY, JUDGE